Eastern District of Kentucky
**FILED**

OCT 0 2 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

**NOT RECOMMENDED FOR PUBLICATION
OR CITATION AS AUTHORITY**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

CIVIL ACTION NO. 05-CV-395-KSF

GLENN L. WILLIAMS                                                    PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

JOE W. BOOKER, JR., ET AL.                                          DEFENDANTS

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on the defendants' motion to dismiss or, in the alternative, for entry of summary judgment [Record Nos. 19-20] in the instant action, brought pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). The *pro se* plaintiff has now submitted a response [Record No. 27]; the defendants have replied [Record No. 28]; and the plaintiff has filed a sur-reply [Record No. 29].

### BACKGROUND

As the Court noted in an earlier Order, Plaintiff Williams, who is incarcerated in the Federal Medical Center ("FMC") in Lexington, Kentucky, filed a previous *pro se* suit in this Court pursuant *Bivens*. In *Glenn Larry Williams v. Bureau of Prisons*, Lex. No. 03-CV-145-JMH, the plaintiff named the Federal Bureau of Prisons ("BOP") and then-warden George Snyder as the defendants, and he complained of a stroke he suffered at the prison in 2002 and the purportedly insufficient aftercare he received.

This Court dismissed Williams' first complaint, *sua sponte*, without prejudice, on the plaintiff's admission that he had not exhausted the BOP administrative remedies available to him

prior to the date of his filing the lawsuit. The dismissal was affirmed on appeal, the Sixth Circuit writing that "Williams may be able to re-file his complaint after exhausting administrative remedies because the district court dismissed the case without prejudice." *Williams v. Federal Bureau of Prisons*, 86 Fed.Appx. 894, 895 (6th Cir. 2004).

On September 28, 2005, Glenn L. Williams initiated the instant case with the filing of another *pro se* civil rights complaint pursuant to *Bivens* about the same 2002 stroke, and this time he attached copies of the BOP's responses to his medical complaints. The plaintiff again seeks damages, including punitive damages, as well as declaratory and injunctive relief, from a later FMC-Lexington warden, Joe W. Booker, and FMC-Lexington's Clinical Director, Dr. Michael J. Growse, in their individual and official capacities.

The plaintiff has claimed that the medical treatment which he has received and is still receiving at FMC-Lexington amounts to a violation of his rights (1) to due process; (2) to be free of discrimination; (3) under the Eighth Amendment prohibition against cruel and unusual punishment; (4) under the Rehabilitation Act ("RA") and the Americans with Disabilities Act ("ADA"); and (5) in furtherance of a conspiracy, the plaintiff citing 42 U.S.C. §§1985 and 1996. He has also claimed (6) that the defendants have committed the state tort of negligence.

Upon screening the complaint, the Court summarized the plaintiff's current factual allegations as follows:

> The plaintiff states that he was convicted of drug and firearms violations in the United States District Court for the Middle District of Tennessee and was sentenced to 262 months' imprisonment. He arrived at FMC-Lexington on March 29, 2002, with a history of diabetes and a 2001 transient ischemic attack (TIA).[1]

---

[1] The defendant doctor later explains that a transient ischemic attack is an interruption of the blood flow to the brain, and "[b]ecause TIAs are similar to strokes, they are sometimes called 'mini-stokes.'" Record No. 19 at 3.

Because of overcrowding at the facility, he was placed in the Special Housing Unit of the prison, an area of inferior conditions and one ill-equipped to care for him.

Two weeks later, the plaintiff suffered "a major, sudden onset stroke," after which he was purportedly provided only minimal physical therapy. Documents exchanged in the BOP's administrative remedy process, as the plaintiff sought more medical attention, reveal that the defendants' position was that the plaintiff had reached the maximum benefit of such therapy and no more would benefit him. The plaintiff, however, claims that he has not been appropriately evaluated by outside experts and certain improvements in his movement show that he can improve further, if provided with proper treatment.

Record No. 4. Noting that the plaintiff had alleged that his treatment rises to the level of a constitutional violation and that this time he had demonstrated exhaustion of the BOP administrative process, the Court ordered that the defendants be served. They have responded with today's motion.

### DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

The defendants, by Assistant United States Attorney, move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) or for entry of summary judgment pursuant to Rule 56(b), contending that the plaintiff cannot maintain this action on any of his claims.

With declarations from both of the defendants and a BOP attorney attached to their motion, Dr. Growse and Warden Snyder begin their supporting memorandum with their version of the facts, insisting that placement in the segregated housing unit ("SHU") was not their decision, but regardless, the SHU "was perfectly appropriate for inmates with a risk of stroke," such as the plaintiff. Defendant Snyder swears that he deferred all medical decisions to Dr. Growse.

Dr. Growse declares that he personally saw the plaintiff only twice. However, as the prison's clinical director, he is able to set out all of the medical information and to provide medical records which he attaches to his declaration. These cover the plaintiff's history, his condition upon arrival at FMC-Lexington, the onset of his stroke, Williams' stay in the hospital, his care thereafter, and his

3

purported refusal to believe the medical professionals who have advised that the paralysis from his stroke is permanent. This defendant also relates the dates relevant herein: March 29, 2002, when the plaintiff transferred into the Lexington facility; April 16, 2002, the date of the stroke and his entry into the hospital for three days; and April 25, 2002 to July 20, 2002, the period of time that the plaintiff initially underwent physical therapy.

As to their legal arguments, the defendants contend that the complaint should be dismissed because (1) the plaintiff has failed to state a claim under the Eighth Amendment; (2) the Court lacks subject matter jurisdiction because constitutional claims are barred by the statute of limitations; (3) the plaintiff fails to state a claim as to his due process, equal protection, and civil rights conspiracy claims; (4) he also fails to state a claim under the Americans with Disabilities Act or the Rehabilitation Act; (5) the negligence and civil conspiracy tort claims should be dismissed for failure to exhaust; and (6) they are entitled to qualified immunity. In the alternative, the defendants request entry of summary judgment in their favor.

Plaintiff's Response

The plaintiff has filed a verified response, first noting the ways in which he disagrees with the defendants' version of the facts. He insists that he should not have been placed in SHU initially, as there were beds available in the hospital/nursing unit of the prison and the SHU is not appropriate for prisoners with any kind of sickness, weakness, or disability. The plaintiff contends that the stroke could have been prevented if he had not been assigned to the SHU and if Defendant Growse, who knew or had reason to know of his medical condition, had not been deliberately indifferent. As it was, he claims, the SHU placement caused the stroke to commence and meant that he received no care for the first 6-8 hours of his stroke.

4

Additionally, the plaintiff takes offense at the movants' reference to the plaintiff's history of "cocaine use, smoking and binge alcohol drinking," on the ground that there are no such medical records, and he claims that the defendants have made these allegations only to demean him. He denies that he delayed reporting his stroke symptoms on the day of the stroke; rather, he told the "morning PA or pill line person" of his symptoms; the plaintiff admitted that he felt the same as when he had TIAs previously; and the staff's response was merely to tell him to let them know if the symptoms got worse. Finally, the plaintiff objects to the idea that he does not need further therapy or evaluation, insisting that he wants them simply because he needs them.

With regard to the law, the plaintiff maintains that he has stated constitutional and other claims. He insists that his pleadings explain that both defendants knew of his problems, failed to do their jobs, and thereby showed deliberate indifference to his serious medical needs. He contends that he did exhaust as to both defendants, as his complaints to the defendant warden were answered by the defendant doctor. And the statute of limitations could not have run because his unsatisfactory care is continuing.

Williams states that he feels some improvement and is frustrated that he cannot be followed by a neurologist and special professional therapists. He prays that the Court permit this case to go on to discovery and trial.

## Defendants' Reply

In reply, the defendants first address the facts which are now uncontroverted. They note that the plaintiff's response contains no evidence contradicting their assertion that neither of them had personal involvement in initially assessing Plaintiff and putting him in SHU, nor evidence supporting his claim that an initial placement in the hospital or nursing unit was medically necessary. He also

5

does not dispute that the warden lacked involvement in the plaintiff's medical problems/SHU. Additionally, the defendants point out that the plaintiff has admitted that Dr. Growse "indeed may not have decided to place Plaintiff in the SHU . . . ," and they characterize his contention that the doctor knew or should have known of his medical condition prior to his arrival as being merely "speculative."

The defendants claim that the plaintiff has added nothing to support his due process, equal protection, and civil rights conspiracy claims. Additionally, they rely on their arguments for dismissal as set forth in their motion and memorandum.

Sur-reply

The plaintiff has submitted a sur-reply. While such a pleading is recognized historically, it is not now a part of the Federal Rules of Civil Procedure. Nonetheless, always mindful of Plaintiff's *pro se* status, the Court has considered its contents.

The plaintiff continues to contend that the defendants had actual knowledge of his condition and did nothing. He claims that Dr. Growse knew from a fax which Plaintiff's attorney sent to so inform him prior to his arrival at FMC-Lexington; and after his arrival, the plaintiff claims that he sent a written request for medical care to then-warden Booker. Additionally, Williams continues to insist that he has had improvement in his post-stroke abilities and believes that he could benefit from additional therapy. Finally, he also supplies additional information about the facilities for the disabled and asserts that he is entitled to prevail on his Rehabilitation Act claims.

STANDARDS FOR DISMISSAL/SUMMARY JUDGMENT

Federal Rule of Civil Procedure 12(b) provides for the dismissal of claims and parties for seven listed reasons. Subparagraph (6) governs motions for dismissals for "failure to state a claim

6

upon which relief can be granted," a ground relied upon herein. Fed.R.Civ.P. 12(b)(6).

In consideration of a Rule 12(b)(6) motion, well pled allegations must be taken as true and must be construed most favorably toward the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if there is no law to support the claims, if the alleged facts are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976).

The United States Court of Appeals for the Sixth Circuit has written of the burden imposed on the plaintiff upon a defendant's filing of such a motion, as follows: "To survive a motion to dismiss . . ., a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. Nonetheless, conclusory allegations or conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (citations omitted), *cert. denied*, 126 S.Ct. 1911 (2006).

Rule 12(b)(6) continues, in pertinent part, as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*Id.* Thus, the plain language of the rule permits a Rule 12(b)(6) motion to be converted into a motion for summary judgment.

If supporting affidavits go to the underlying claim and the court considers them pertinent to its ruling on the Rule 12(b)(6) motion for failure to state a claim, then the court "shall" convert the

motion into one for summary judgment pursuant to Rule 56. *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993). Because the defendants' three attached declarations and attached exhibits herein go to the merits of the petitioner's claims and this Court has considered their content, the Court has converted the motion to one for summary judgment.

Therefore, the Court must also examine the standards for summary judgment. It is this Court's duty to determine whether there are "no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).

In its consideration of a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967 (1997). The Supreme Court of the United States has also directed that a court look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial; "metaphysical doubt" is insufficient. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

8

The moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex Corp. v. Catrett*, 477 U.S. at 324-25. After a moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Id.* If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Celotex*, 477 U.S. at 322-23.

Because the defendants contend both that the plaintiff has failed to meet the applicable standards for his constitutional claims and also that they are entitled to qualified immunity, the Court examines the standard for the latter also. Qualified immunity is described by the Supreme Court as follows: "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Sixth Circuit has set out a tripartite procedure for evaluating claims of qualified immunity, the first step of which is to determine whether a constitutional violation occurred. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996).

Therefore, the question of whether the named defendants are entitled to qualified immunity is the same as the initial question herein, *i.e.*, whether the plaintiff has established that a constitutional violation occurred at the hands of persons acting under color of federal law. The plaintiff has the burden of establishing both that his rights were violated and that the defendants are not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991); *Williams v. Mehra*, 186 F.3d 685, 692-93 (6th Cir. 1999) (quoting *Celotex,* 477 U.S. at 322).

9

In its consideration below, the Court will construe the plaintiff's verified response as a competing affidavit controverting the facts as presented in the defendants' declarations. *See Hooks v. Hooks*, 771 F.2d 935, 945-46 (6th Cir. 1985).

DISCUSSION

The Court finds that the following facts are not genuinely in dispute. The plaintiff was 54 years old when he was transferred to FMC-Lexington on March 29, 2002. Upon arrival, he was assigned to the prison's SHU. Williams was at risk for stroke at that time and had suffered either a stroke or TIA the preceding year. He had a physical and blood work-up immediately and was continued on his previous medications initially, including aspirin for stroke prevention and insulin for diabetes. A change was made on April 2, 2002, when the plaintiff was started on a "sliding scale insulin" therapy for better control of his diabetes. The plaintiff was not taking any medication for his blood pressure and on examination on April 11, 2002, he presented with normal blood pressure.

In the early hours of April 16, 2002, the plaintiff began to have symptoms of weakness, numbness, and tingling in the right side of his body. He initially noted that the symptoms were similar to how he felt when the 2001 TIA occurred. When he reported to staff that the symptoms had worsened, the plaintiff was taken to the University of Kentucky Medical Center ("U.K."). There his symptoms progressed, he developed speech problems and paralysis on the right side of his body, and an MRI confirmed that he had suffered an infarct of the left brain.

On April 19, 2002, Williams was discharged from the hospital and returned to the prison. The defendants contend further--and the plaintiff has not refuted--that he had a follow-up appointment with a U.K. neurologist; upon the specialist's recommendations, a staff physician at FMC-Lexington implemented standard rehabilitation; that Williams received physical therapy from

10

licensed therapists at the prison a total of 35 times, from April 25, 2002, and until July 20, 2002; and that he had a later series of therapy, consisting of 18 sessions, from February 2, 2004, to March 29, 2004.

## Sovereign Immunity

The law is clear that the federal courts do not have jurisdiction to consider actions for monetary damages against the United States unless sovereign immunity has been waived. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Therefore, when damages are sought against federal employees in their official capacities, the damages in essence are sought against the United States, and such claims cannot be maintained. *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975); *Morris v. United States*, 521 F.2d 872, 874-75 (9th Cir. 1975).

In *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court wrote that it would allow federal jurisdiction under 28 U.S.C. §1331 against individual federal officers for damages against the federal defendants in their individual capacities for violations of constitutional rights under the doctrine of *Bivens*, only where the conduct rises to the level of a constitutional violation.

Thus, this plaintiff's claims for damages against the warden and clinical director in their official capacities are barred by the doctrine of sovereign immunity, and this case may go forward against them only in their individual capacities.

## Failure to State a Claim

The main thrust of the plaintiff's complaint, for damages and other relief, is his Eighth Amendment claim. The Supreme Court has held that "[i]n order to state a cognizable claim [under the Eighth Amendment with regard to medical care] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs."

11

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Therefore, a prisoner must show two elements, both "deliberate indifference" and "serious medical needs." *Id.* Deliberate indifference may be "manifested by prison doctors in their response to a prisoner's needs or by prison [staff] in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104.

Deliberate indifference has been defined as "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). *Farmer* "recognizes the legitimacy of showing deliberate indifference by circumstantial proof." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). *Farmer* does not hold, however, that repeated acts of negligence constitute deliberate indifference. *Id.* at 129. The inflicting official must "act or fail to act with subjective awareness of the deprivation. Lack of objective reasonableness, i.e., a failure to act as a reasonable person would have acted, does not by itself equal deliberate indifference." *Id.* (citing *Farmer*, 114 S. Ct. at 1978, 1982 n.8).

In the case *sub judice*, the plaintiff claims that the defendants exhibited deliberate indifference to his serious medical needs at two time intervals, in the 2-week interval between his arrival and his stroke, and after his stroke. The Court finds that even assuming the plaintiff's medical needs to be sufficiently "serious" to satisfy the constitutional standard (*see Turner v. Taylor*, 412 F.3d 629, 646 (6th Cir. 2005)), he has failed to support his claim that the named defendants were deliberately indifferent at either of these times.

Upon this plaintiff's arrival at the prison, neither of the defendants is shown to have knowingly failed to give him medical attention. To the contrary, he was provided a full physical,

blood work, and a continuation of the same prescriptions which he had been taking at the last institution. Further, within the short time between arrival and the stroke, the medical staff made a change in his diabetes medication in an effort to better control that condition. His records show, and he admits, he had not had a TIA for a year.

The record contains no support for the plaintiff's contention that at the time of his arrival, his placement in the SHU was inappropriate and that he brought a perceived enhanced risk there to the defendants' attention, but they still did nothing. To date, he has described no conditions in SHU which rendered the SHU an unacceptable placement for him then or now. He has provided no evidence or factual allegations to support his conviction that his SHU placement was a partial cause of his stroke or that his stroke was worse for his being in SHU for the first hours of his symptoms.

The plaintiff has also not contradicted the defendants' assertion that he received proper medical treatment after the stroke, including his having a neurology consultation and his having months of appropriate physical therapy, both in 2002 and in 2004. The medical records attached to the defendants' motion support their contention that the plaintiff consistently received appropriate medical attention and certainly do not support the plaintiff's claim that his post-stroke condition requires more treatment and was or is being ignored.

The plaintiff has challenged his medical history in one respect: contending that the defendants are lying when they contend that his history included smoking, binge drinking and drug use in the past. However, again the records herein fail to support the plaintiff's allegations. The very first page of the stack of documents provided from the plaintiff's medical records shows a history of "cannabis abuse" and "cocaine abuse," and several later documents also refer to this in his history. An early medical summary by his FMC-Lexington physician, Dr. Linda de Hoyos, contains his

13

admission to her that he smoked up to 3 packs of cigarettes a day until he quit smoking 10 years

earlier, he "admit[ted] to being a social drinker with episodes of two to three-day binges every one

to two months for most of his lifetime . . . , and he admitted cocaine abuse and cannabis abuse."

Thus, Dr. Growse's reference to these elements in the plaintiff's history is based in the record and

not made up to embarrass Williams.

The records also show that the plaintiff had a neurological consultation after the stroke, and

according to the specialist's report to his doctor, Williams "would probably benefit from physical

therapy, control of his diabetes and hypertension . . . .." He had the physical therapy at the prison,

and in 2004, when a specific problem developed, he was readmitted to therapy. His status after his

initial progress was unchanged at the time of the latter therapy, according to these professionals.

Although the plaintiff wants more attention, he has not made a case for its continued necessity, and

the defendants cannot be liable for cruel and unusual punishment unless they knowingly refused to

provide a medical necessity.

This Court is convinced that the instant plaintiff has failed to state a claim under the Eighth

Amendment against either defendant because he has failed to allege sufficient facts to evidence a

culpable state of mind in either defendant. This is true with regard to his original assessment,

placement in the SHU, and also his care after the stroke. The instant record does not contain facts

of conduct by the defendants rising to a constitutional level; rather, the record evidences what is a

clear difference of opinion between the prisoner-patient and the prison's medical personnel.

Moreover, the attached administrative remedy documents provided by the plaintiff himself

show that his requests of the BOP included treatment that the un-incarcerated population is not

provided/guaranteed, *i.e.*, ". . . I would like all possible treatments I would be able to acquire outside

14

the institution, including lawful adult stem cell research or any other neurological breakthroughs with the very real possibility of re-acquiring the use of my right side and lowering the probability for further treatment." Prisoners are not entitled to unfettered access to the medical treatment of their choice. *See Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000 (1992) (citing *Estelle v. Gamble*, 429 U.S. at 103-104).

A corollary to the above-stated Eighth Amendment law is that when a plaintiff claims deliberate indifference to his serious medical needs but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *Birrell v. Brown*, 867 F.2d 956, 958 (6th Cir. 1989).

"'Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.'" *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976)).

In the case *sub judice*, the plaintiff's allegations not only fail to rise to the above constitutional standards, they ask the Court to second-guess the care givers in the plaintiff's medical records. The policy that medical decisions not be second-guessed by the courts is clearly applicable herein. *See e.g., McFarland v. Austin*, 2006 WL 2572083 (6th Cir. 2006) (slip op.); *Hix v. Tennessee Dept. of Corrections*, 2006 WL 2431103 (6th Cir. 2006) (slip op.).

15

The Court also agrees with the defendants' contention that the plaintiff has presented insufficient factual allegations to state cognizable claims under the U.S. Constitution's due process clause (see *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1951)); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993))); its equal protection guarantee (*see Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971)); and the civil rights conspiracy statutes (*see Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005)).

The plaintiff's failure to present facts sufficient to state cognizable claims is such that there is another basis for dismissal of these claims. He has failed to include specific allegations of the personal involvement of each defendant in the complained-of SHU placement and his medical care. *Bivens* defendants can only be held liable if they acted knowingly and participated in the unconstitutional conduct. *Boettger v. Moore*, 483 F.2d 86, 87 (9th Cir. 1973); *Monell v. Dep't of Social Serv.*, 436 U.S. 658 (1978).

Defendants without personal involvement or participation in the unconstitutional acts must be dismissed. *Rizzo v. Goode*, 423 U.S. 362 (1976); *Nwaebo v. Hawk-Sawyer*, 83 Fed.Appx. 85 (6th Cir. 2003) (unpublished). Denial of administrative complaints up the levels of appeal, be they written by the warden or the doctor, are insufficient to confer liability. *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999). Therefore, an alternative basis for dismissal of the claims against the instant defendants would be the plaintiff's failure to allege with specificity what each did and when and how it caused damage to the plaintiff.

## Other Claims

There are two sets of claims which cannot be considered to be exhausted. A reading of the administrative remedy documents attached to the plaintiff's complaint reveals that he did not raise

16

therein the disability claims which he now urges.  Since he did not pursue these claims administratively to exhaustion, then he may not pursue them in the federal court now.  *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003).  Accordingly, the plaintiff's claims under the Rehabilitation Act and the Americans with Disabilities Act will be dismissed without prejudice.  *See Bell v. Konteh*, 450 F.3d 651, 655 n. 5 (6th Cir. 2006).

The second set of unexhausted claims are those which fall under the Federal Tort Claims Act ("FTCA").  To the extent that Plaintiff Williams seeks compensation for the tort of negligence or a civil conspiracy by federal employees acting within the scope of their employment or office, the FTCA is the exclusive mode for recovery.  *United States v. Smith*, 499 U.S. 160, 166 (1991).  The FTCA contains its own set of administrative remedies which a plaintiff must exhaust prior to adjudicating in federal court.  *Tinker-Bey v. Meyers*, 800 F.2d 710 (7th Cir. 1986).  The plaintiff must present his claim with the regional office of the Bureau of Prisons in the region where the tort happened within two years and the presentment must contain a sum certain demand.  *See* 28 U.S.C. §2675(a); 28 C.F.R. §543.30 *et seq.*; *Kokaras v. U.S.*, 980 F.2d 20 (1st Cir. 1992), *cert. denied*, 510 U.S. 819 (1993); *Conn v. United States*, 867 F.2d 916, 918 (6th Cir. 1989).

There is no allegation that the instant plaintiff has administratively exhausted with regard to these tort claims.  Even had he properly named the United States as the true defendant, the Court would still be compelled to dismiss the tort claims for his failure to meet the FTCA's presentment requirement.  *See Rodriguez v. Smith*, 2006 WL 680965 (E.D. Pa. 2006) (slip op.).  These tort claims, too, will be dismissed without prejudice.

Finally, this Court has compared these facts and relevant law with similar cases and finds that its rulings herein are consistent therewith.  These cases include those reaching the appellate court

17

in this circuit. In addition to *Hix* and *Nwaebo, supra,* see *McFarland v. Austin,* 2006 WL 2572083 (6th Cir. 2006) (slip op.). The Court also notes that the result herein is consistent with cases which are brought outside this circuit by prisoners who suffered strokes. *See Smith v. Tharp,* 97 Fed.Appx. 815 (10th Cir. 2004); *Muhammad v. U.S. Bureau of Prisons,* 1990 WL 47538 (D. Kan. 1990) (not reported in F.Supp.).

CONCLUSION

Accordingly, the Court having concluded that the defendants have carried their burden with these dispositive motions; that the plaintiff has failed to carry his; that the defendants are entitled to judgment as a matter of law; and being otherwise advised, **IT IS ORDERED** as follows:

(1)     The defendants' motion to dismiss [Record No. 19] is **GRANTED** to the following extent: the Court **DISMISSES**, without prejudice, all of Plaintiff's claims based on the Federal Tort Claims Act, the Americans with Disabilities Act, and the Rehabilitation Act.

(2)     The defendants' motion for summary judgment [Record No. 20] is **GRANTED** to the following extent: the Court **ENTERS** summary judgment for the defendants and against the plaintiff, with prejudice, on Williams' official capacity, statutory civil rights, and constitutional claims.

(3)     The defendants' motion to strike [Record No. 30] is **DENIED**.

(4)     This action is **DISMISSED**, and Judgment shall be entered contemporaneously with this Memorandum Opinion in favor of the defendants.

This the _____ day of October, 2006.

KARL S. FORESTER, SENIOR JUDGE

18